**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINGLING FAN,<br><br>              Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>              Defendant. | Civil Action No.: 1:25-cv-2881-UNA |

**OPPOSITION TO PLAINTIFF'S EMERGENCY
<u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

I.      INTRODUCTION

Plaintiff seeks a temporary restraining order ("TRO") because she cannot get into email accounts she claims are hers. Compl. ¶ 2.[1] Plaintiff cannot satisfy the two-factor authentication requirements that protect email accounts against unauthorized access, allegedly because the NYPD "stole" the phone she used for authentication. Her ensuing frustrations in satisfying the security requirements in Google's account recovery process have led to the instant action against Google for deceptive practices, common law fraud, promissory estoppel, and conversion, related in some unspecified way to Google's Terms of Service.

As frustrating as email account recovery procedures may be, they serve a vital security purpose, and Plaintiff's claims that she has been locked out of her own accounts do not justify the extraordinary remedy of a TRO. Plaintiff's filings do little to indicate how emergency relief is necessary when—in her own telling—she has been locked out of her accounts since February, and there is no evidence of an immediate risk that the accounts or files will soon be destroyed. As a threshold matter, Plaintiff's filings in this litigation fail to offer any allegations regarding how Google purportedly violated its Terms of Service, what provisions it violated, and why its conduct might be actionable as a matter of law under each claim. Those deficiencies preclude survival at the motion to dismiss stage, much less justify the emergency injunctive relief sought via a TRO.

---

[1] Google has never been served with the complaint or summons as required under Federal Rule of Civil Procedure 4. Google only learned of this case when the TRO was emailed to Google (not served on Google's registered agent), and the case was investigated further. While Google references the complaint and related filings throughout its opposition, it does so only to give Plaintiff leniency and consider allegations not referenced in the TRO motion itself. Google reserves all objections to service, forum, and jurisdiction, which will be raised in a forthcoming motion to dismiss.

## II.     LEGAL STANDARD

A temporary restraining order is an "extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011). To meet their burden, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining order were not granted; (3) that such an order would not substantially injure other interested parties; and (4) that such an order furthers the public interest." *Id.* "Of these factors, the first two are the most important." *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 9 (D.D.C. 2022). And critically, the court may not grant a TRO where plaintiff fails to demonstrate substantial likelihood of success on the merits, "regardless of their showing on the other factors." *Id.* (citation and quotation marks omitted). Likewise, "a movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief." *Clevinger v. Advocacy Holdings, Inc.*, 134 F.4th 1230, 1236 (D.C. Cir. 2025) (quotation marks and citations omitted).

## III.    ARGUMENT

Plaintiff has failed to show that *any* of the requisite factors support the issuance of a TRO. And even though courts hold "allegations of [a] pro se complaint . . . to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court is not required to "fish" for plausible claims. *Greenhill v. Spellings*, 482 F.3d 569, 572-73 (D.C. Cir. 2007). Nor does the latitude accorded to *pro se* plaintiffs grant "a license to ignore the Federal Rules of Civil Procedure." *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014) (internal citations and quotation marks omitted). Yet Plaintiff's allegations are woefully vague as

to how Google violated any law or contract, and conclusory as to her contentions of imminent irreparable injury. These deficiencies prove fatal to each of her claims.

### A. There is No Likelihood of Success on the Merits.

Plaintiff contends that, as to her likelihood of success on the merits, "Defendant's enforcement departed from governing terms and fair process promised in its policies and Terms of Service; Plaintiff's pleaded claims (e.g., breach of contract, implied covenant, unfair practices, promissory estoppel)." ECF No. 6 at 3. That is the entirety of her argument on this prong. Neither her TRO motion nor her Complaint reference what exactly was promised in Google's policies and Terms of Service that gave rise to each of her causes of action.

*CPPA.* None of Plaintiff's filings, even when stitched together and read liberally, state a claim under the D.C. Consumer Protection Procedures Act ("CPPA"). Plaintiff does not show, for instance, that Google "made a material misrepresentation or omission that has a tendency to mislead." *Alicke v. MCI Communs. Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). While Plaintiff states that "Google represented—publicly and in recovery/support interfaces—that users who adequately verify identity (including via the original device) can recover access," Compl. ¶ 11, Plaintiff does not explain how she "adequately verif[ied] identity" pursuant to Google's policies. To the contrary, it appears that Plaintiff's unsuccessful attempts to access her account arise from her *inability* to adequately verify her identity pursuant to Google's policies.

Plaintiff's own exhibits support that conclusion. For example, a screenshot from what appears to be Google's login page explains that Plaintiff "didn't provide enough info for Google to be sure this account is really yours." ECF No. 1-1 at 7. Another screenshot seems to indicate that a verification code for a password reset was sent to an account that Plaintiff was also locked out of, further frustrating her account recovery process. *Id.* at 20; *see also id.* at 34 (message from

Plaintiff explaining that "the verification codes are sent to the locked [Gmail] account"). Indeed, a running thread throughout her screenshots is that Plaintiff's inability to recover her accounts stems in large part from the allegation that her primary method of two-factor authentication was apparently linked to her phone, which was "stolen/confiscated" by the NYPD. *Id.* at 34, 37.

Yet even after piecing together Plaintiff's Complaint, exhibits, TRO, and Declaration, it is still impossible to determine which of Google's statements or policies allegedly misled her. That utterly frustrates Google's—and the Court's—ability to assess statements in question "in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008). Accordingly, Plaintiff cannot meet her burden of persuasion to demonstrate that her CPPA claim is likely to succeed on the merits.

*Fraud.* Plaintiff's common law fraud claim (count II) fares no better. "To state a claim for fraud in the District of Columbia, Plaintiffs must allege (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation." *Jones v. District of Columbia*, 241 F. Supp. 3d 81, 88 (D.D.C. 2017). Federal Rule 9(b)'s heightened pleading standard for fraud claims also requires plaintiffs to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *Id.* (quoting *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 128-29 (D.D.C. 2014)).

Yet none of Plaintiff's papers state the elements, even in a conclusory fashion. The most Plaintiff alleges is that Google, in some unspecified way, "departed from governing terms and fair process promised in its policies and Terms of Service." ECF No. 6 at 3. This vague statement, even combined with her exhibits, falls far short of the particularity required by Rule 9(b), and it utterly

fails to demonstrate a likelihood that Plaintiff can prove each element "by clear and convincing evidence" as is required for a fraud claim. *Redmond v. Birkel*, 933 F. Supp. 1, 3 (D.D.C. 1996).

***Promissory Estoppel & Contract.*** Plaintiff's breach of contract claim does not allege any of the requisite elements, including what contractual obligation or duty was breached and how her damages arose from that breach (rather than, for example, her own issues with losing possession of her phone and linking her recovery emails together). *See Ihebereme v. Capital One, N.A.*, 933 F. Supp. 2d 86, 100 (D.D.C. 2013) (discussing elements of contract claim). And while Plaintiff also argues that Google breached the covenant of good faith and fair dealing by "arbitrarily frustrating recovery," ECF No. 1 at 4, her exhibits show nothing more than that Google was performing its due diligence in verifying that she was the lawful account owner. *Ihebereme*, 933 F. Supp. 2d at 102 ("defendant could not have breached its duty of fair dealing when reasonable persons in the parties' shoes would have expected the contract to be performed as it was.") (quoting *Adler v. Abramson*, 728 A.2d 86, 90-91 (D.C. 1999)).

Plaintiff's promissory estoppel claim also fails because—as she recognizes by pleading in the alternative—Google's Terms of Service appear to govern this case. *See Ihebereme*, 933 F. Supp. 2d at 102 ("A plaintiff cannot make a claim for promissory estoppel if a written contract governing the alleged promise exists."); ECF No. 6 at 3 (noting that Plaintiff's claims stem from Google's "governing terms and fair process promised in its policies and Terms of Service").

***Conversion***. For the same reasons, Plaintiff's conversion claim is unlikely to succeed because the facts, even when liberally construed, fail to meet the elements of a conversion claim. For one, she has not made a clear showing that she is even the owner of the accounts in question. *See O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990) (discussing elements of conversion claim). Indeed, that is the entire issue surrounding her inability to regain

access over them. And her declaration that the accounts "are mine, 100% ownership" does little to alleviate that concern. ECF No. 6-1. Second, Google's actions in engaging in due diligence to ensure that only the rightful account owner may access an account is hardly an "unlawful exercise" of control. *See O'Callaghan*, 741 F. Supp. at 279. To the contrary, Google incorporates robust security features across its services in order to *protect* its users' sensitive information pursuant to its policies.[2]

Because none of Plaintiff's claims demonstrate likelihood of success on the merits, her application for a TRO must be denied.

**B. Entry of a TRO is Otherwise Inappropriate.**

Even if the Court were to consider the other factors required for a TRO, the result would be the same. Plaintiff offers only vague and conclusory allegations, at best, regarding the other requirements for the relief sought and thus fails on those fronts as well.

Plaintiff states that she faces "immediate irreparable harms" in the form of "missed deadlines, operational disruption, loss of goodwill, inability to access funds and communications, and risk of evidence spoliation." ECF No. 6 at 1. But Plaintiff does not provide any support to her contention that such alleged harms will, in fact, occur, let alone allegations sufficient to meet the

---

[2] *See* Google Privacy Policy, https://policies.google.com/privacy (last visited Sept. 11, 2025); Google Safety Center, https://safety.google/intl/en_us/settings/security-settings/ (last visited Sept. 11, 2025).

The Court may take judicial notice of Google's publicly available policies, whose existence plaintiff does not appear to contest (as she vaguely references them). *See Steinarsdottir v. Tripscout, Inc.*, No. 23-15282024, 2024 WL 1532587, at *4 n.1 (D.D.C. Apr. 9, 2024) (taking judicial notice of Instagram's privacy policy, particularly as there was no dispute as to the authenticity or existence of the policy); see also *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (Facebook's publicly available Terms of Service and Community Standards subject to judicial notice).

"high standard for irreparable injury," namely that it "must be both certain and great."[3] *See Clevinger v. Advocacy Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025). Indeed, Google's policies indicate that it will not delete an account or its data unless the account has been inactive for two years.[4] Per Plaintiff's allegations, the fact that she has been locked out since February 2025 means that the accounts should remain "active" without risk of deletion for at least another year and half. Since it is far from clearly demonstrated that Plaintiff's harms are imminent or irreparable, *see Sibley*, 810 F. Supp. 2d at 310, Plaintiff's TRO must be denied on this independent ground alone. *Clevinger*, 134 F.4th at 1236.

Plaintiff's contentions regarding the equities and public interest are equally conclusory and unsupported. ECF No. 6 at 3. Again, the TRO's request for "temporary restoration with standard security safeguards" begs the question that these are in fact her accounts, and that "standard security safeguards" would allow her to access her accounts in the first place. (Plaintiff's own filings suggest that standard security safeguards are exactly what have prevented her from accessing these accounts.) Given the potential security vulnerabilities that would arise by endorsing this approach and the potential backlash that could ensue from providing Plaintiff with access to an account that may not in fact be hers, the balance of equities does not favor Plaintiff. It would also not serve the public interest to allow litigants to use the courts to access a given Google account when they cannot otherwise meet Google's authentication protections. Aside from the glaring cybersecurity loophole that would be created by adopting such an approach, it would incentivize enlisting the courts in all manner of frivolous litigation.

---

[3] Plaintiff notes that her harms were memorialized "on specific dates set forth in the Declaration," ECF No. 6 at 3, but the Declaration provides no dates or discussion of concrete irreparable injuries, much less any imminent irreparable harms about to occur. *See* ECF No. 6-1.

[4] Inactive Google Account Policy, https://support.google.com/accounts/answer/12418290?hl=en (last visited September 11, 2025).

## IV. CONCLUSION

After distilling the TRO, Complaint, and the 46 pages of communications with Google and others attached to Plaintiff's Complaint, it appears that Plaintiff has concocted a lawsuit to attempt to force Google to contravene its account security policies and give her access to an account that she cannot adequately prove is hers. Plaintiff's request for a TRO should thus be denied.

Dated: September 12, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ *Benjamin Margo*
Edward Percarpio (*pro hac vice forthcoming*)　Benjamin Margo (D.C. Bar No.: 110445)
WILSON SONSINI GOODRICH & ROSATI　WILSON SONSINI GOODRICH & ROSATI
Professional Corporation　　　　　　　　　　Professional Corporation
1700 K. Street N.W.　　　　　　　　　　　　1301 Avenue of the Americas, 40th Floor
Washington, DC 20006　　　　　　　　　　　New York, NY 10019-6022
Tel.: (202) 973-8898　　　　　　　　　　　　Tel.: (212) 999-5800
Email: epercarpio@wsgr.com　　　　　　　　Email: bmargo@wsgr.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant*
　　　　　　　　　　　　　　　　　　　　　　*Google LLC*